## APPEAL OF MILLER BROTHERS COAL CO.

Docket No. 6665. Promulgated April 29, 1927.

1. Evidence *held* insufficient to establish the value of a coal lease for the purpose of invested capital or depletion.

2. Claim for depletion on basis of discovery value disallowed.

3. Rates of depreciation as determined by the Commissioner approved for want of evidence.

*Roy T. Bell, C. P. A.*, for the petitioner.

*Arthur J. Seaton, Esq.*, and *Granville S. Borden, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes for the fiscal year ended March 31, 1921, in the amount of $14,269.03. The deficiency results from the disallowance in part of the claimed depletion of certain coal properties held in

fee and under lease, and from the adjustment of depreciation rates on machinery and equipment.

### FINDINGS OF FACT.

The petitioner is an Ohio corporation with its principal office located at 1509 Market Street, Youngstown, Ohio. It was organized July 3, 1918, for the purpose of mining coal in Columbiana County, Ohio. In its operations the petitioner used the strip method of mining.

In April, 1918, T. W. Miller and George J. Miller, contractors operating as Miller Brothers, made tests and drillings to determine the mineable quantity of coal on the farm of Edgar and Mary C. Arter, the said farm being located in Columbiana County, and on July 12, 1918, they negotiated a lease for the premises. The lease, reserving to the lessors 10 of the total 152 acres, gave to the lessees the right to remove all mineable and merchantable coal in, under, or upon the premises and fixed the royalty at 25 cents per ton. It also provided that the lessees should be permitted to transport across the land in question, coal and other minerals mined from other premises but that a payment of one cent for each ton of coal or other mineral so transported should be made. The lessees were required to begin operations the day following the execution of the lease.

On August 3, 1918, Miller Brothers proposed to transfer the lease to the Arter farm to the taxpayer corporation for 330 shares of its capital stock, said stock having a par value of $100 per share. They also proposed to rent to the petitioner certain equipment including steam shovels, wagons, horses, mining cars and track, an engine, and other miscellaneous items, for $800 per month. This equipment had previously been purchased for road building. The offer was accepted by the board of directors and approved by the stockholders on the day it was made.

On January 5, 1920, the petitioner purchased a tract of land containing approximately 47 acres, known as the Gray farm, for $6,500, and on August 27, 1920, it purchased the Baker farm of 190½ acres located south of the Arter property and west of the Gray farm, for $23,823.76. Drilling tests indicated a vein of No. 6 coal 5 feet thick on the two farms, underlying 55 acres of the Baker farm and 17 acres of the Gray farm. From these tests it was determined that the recoverable tonnage was 10,000 tons per acre, or a total of 720,000 tons for both tracts.

North of the petitioner's property at a distance of five and seven miles respectively, are the Washingtonville and Leetonia mines, while the West Point mines are about ten miles south. Other mines are located ten or twelve miles east.

The coal on the Arter farm was exhausted in the winter of 1920 after approximately 42,000 tons had been mined. Operations on the Gray and Baker farms were discontinued in 1925. At that time approximately 300,000 tons had been removed from these properties. The reason given by the petitioner for discontinuing operations was the cancellation of an advantageous contract for the sale of its coal and the high cost of mining due to the heavy overburden covering the coal in places to a depth of 55 feet.

After operating for about one year under the rental agreement of August 3, 1918, the petitioner purchased a quantity of machinery and equipment from Miller Brothers, one item of which was a three-quarter-yard steam shovel which at that time had been in use about three years. It was discarded at the time mining was discontinued in 1925. In 1921 or 1922, the petitioner puchased a secondhand shovel of 3½ yards capacity, which was used several years and then rebuilt and sold for $40,000. At or about the same time the petitioner purchased a 6-yard shovel of the type commonly used in operations in which the petitioner was engaged. All of the equipment purchased from Miller Brothers had been used for two or more years at the time of the purchase.

Following is a table of the depreciation rates adopted by the Commissioner in computing the deficiency and of those claimed as correct by the petitioner:

|  | Used by Commissioner. | Rates proposed. |
|---|---|---|
|  | *Per cent.* | *Per cent.* |
| Large shovels | 10 | 20 |
| Mine cars | 15 | 25 |
| Horses | 20 | 25 |
| Locomotives | 10 | 20 |
| Track and siding | 15 | 8⅓ |
| Mine houses | 4 | 10 |
| Tipple | 5 | 10 |
| Miscellaneous equipment | 10 | 10 |

OPINION.

GREEN: The issues presented by this appeal for determination are: (1) What value, if any, should be attributed to the Arter lease for invested capital and depletion purposes; (2) what is the proper rate of depletion on the Gray and Baker properties; (3) whether or not the Commissioner erred in his adjustment of the depreciation rates on machinery and equipment.

Counsel for the petitioner contends that the value of the Arter lease at the time it was acquired by the petitioner was $33,000 and

that this amount should be used in computing the invested capital and depletion. This contention seems to be based on the fact that the lease was paid in to the taxpayer corporation for stock having a par value of $33,000. No evidence was submitted to show that the stock had any value or that the petitioner had any assets of value either before or after the issuing of the stock. Neither does the record show that the lease had any cost to Miller Brothers or to the taxpayer corporation. The consideration recited by the lease was the 25-cent royalty to be paid on each ton of coal mined and the one-cent royalty on the coal or other mineral transported across the Arter property. This alone is not sufficient to show that the lease had any value. *Appeal of Bader Coal Co.,* 2 B. T. A. 239.

It was suggested that due to the development of the property by the petitioner's assignors, the petitioner was entitled to discovery value on the lease under the provisions of sections 214(a)(10) and 234(a)(9) of the Revenue Acts of 1918 and 1921. Without going into the question as to whether or not the property in question was located in a proven field, we are able to dispose of this question by calling attention to the fact that we have been unable to find that the lease had any value, and as a result can not hold that it had value "materially disproportionate to cost" as is necessary for the application of sections 214(a)(10) and 234(a)(9) of the Acts mentioned. See *Appeal of H. E. Sadler,* 4 B. T. A. 1014.

In arriving at the rate of depletion for the Gray and Baker properties, the Commissioner has accepted the figures as to cost and recoverable tonnage submitted by the petitioner in its valuation schedule. Regarding the rates thus arrived at, the petitioner's counsel has set forth in his brief certain statements to show that the recoverable tonnage set out in the valuation schedules was excessive and greatly overstated; that the coal vein, instead of being of an average thickness of 5 feet as set forth in the schedule, pinched down in places to a thickness of only 20 inches, averaging only about 3½ feet; and that the recoverable tonnage was in fact only 400,000 tons. Whether this is true or not we have no way of knowing. Opportunity was offered the petitioner at the hearing to submit such material evidence as was deemed necessary to prove its case, but no effort was made to prove the statements set forth in the brief. We are bound in our decision by the evidence before us and can not go outside of the record in arriving at the deficiency.

There is an intimation, nothing more, in the record, that due to the expense of mining the remainder of the coal, the recoverable coal has been exhausted and that the depletion should be computed on the basis of the coal extracted at the time operations were discontinued in 1925. We can not, however, decide cases on intimation.

With reference to the depreciation on machinery and equipment, we must also find in favor of the Commissioner. To substantiate the petitioner's claim in this matter we have the opinion of T. W. Miller, treasurer and general manager of the taxpayer corporation, and his opinion on the items about which detailed information is given does not support the claims of the petitioner. The petitioner seeks to have steam shovels depreciated at the rate of 20 per cent, whereas the testimony offered indicates that such shovels have at least a life of seven or eight years or more. With reference to the horses used, the petitioner claims depreciation at the rate of 25 per cent and the Commissioner has allowed 20 per cent, but the petitioner's witness testified that 15 per cent was proper. On such proof we do not feel justified in disturbing the rates used by the Commissioner.

*Judgment will be entered for the Commissioner.*